**E-FILED**
Monday, 27 March, 2006  09:41:35 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ALLAN WARMAN,
       Plaintiff,

vs.                                                          02-1376

DR. STANLEY SIMS,  et al.
       Defendants.

## ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement [d/e 42, 47].

## BACKGROUND

The plaintiff has one surviving claim: that Defendant Dr. Stanley Sims and Defendant Wexford Health Sources, Inc. violated plaintiff's Eighth Amendment rights when they were deliberately indifferent to his serious medical needs.  The plaintiff claims the defendants failed to provide care for a serious knee injury.   All other claims and defendants have been dismissed *See* September 21, 2004 Court Order.

On February 9, 2006, the court informed the plaintiff that his response to the motion for summary judgement made reference to exhibits, but none were attached to his response.  The court also informed that defendants that they needed to provide affidavits from medical personnel verifying and interpreting the medical records and providing evidence about any medical care the plaintiff did receive.  Both sides were given additional time to respond to the court order and additional time to respond to additional filings by their opponent.

The defendants have now filed a revised motion for summary judgement.   The defendants' revised motion for summary judgement is not a supplement to the first motion, but an entirely new dispositive motion.  Therefore the court will deny the first motion as moot.

The plaintiff filed a motion asking for additional time to file a response.   Although the court specifically stated that the plaintiff's response must be filed on or before February 27, 2006, the plaintiff said he was confused on the due date. A subsequent clerk of the court entry was somewhat confusing.  Therefore, the court gave the pro se plaintiff one last brief extension. The response deadline has come and gone and the plaintiff has not filed any additional response.

## FACTS

1

The following facts were taken from the defendants' motion for summary judgement and exhibits as well as plaintiff's response.  The plaintiff underwent arthrosporic knee surgery while he was still an inmate at Pontiac Correctional Center.  The surgery took place on June 20, 2002.  The plaintiff was released back to Pontiac Correctional Center for follow-up care.

On July 3, 2002, the plaintiff was transferred to Western Illinois Correctional Center.  Shortly after his arrival, Defendant Dr. Sims evaluated the plaintiff's knee condition.  Dr. Sims was the Medical Director at Western Illinois Correctional Center.  The plaintiff was not on medications when he arrived at the facility.  The plaintiff did have a "one and a half-inch built up heel/shoe for his left leg" which he was allowed to keep. (Sims Aff., p. 2)   The plaintiff was also recommended for a low bunk and gallery assignment.

The plaintiff complained about knee pain in July of 2002 and again in January of 2003.  On both occasions, the plaintiff was evaluated by Dr. Sims.  Dr. Sims says he reviewed the plaintiff's medical history before formulating a care plan for the plaintiff.   According to the medical records, the plaintiff did very well with the surgery.  "His long-term prognosis was guarded due to the likelihood that he would develop more changes and more symptoms as time when on" according to the doctor who performed the surgery. (Sims Aff, p. 2)   The surgeon noted that other areas of the plaintiff's knee were in excellent shape and he did very well before he was discharged.

On July 9, 2002, Dr. Sims says the plaintiff insisted that he be allowed to see an orthopaedic surgeon and stated he needed a new orthopedic show.  Dr. Sims says he examined the plaintiff's knee and found that he did have some tenderness.  The plaintiff did not have any swelling or other noticeable problems.  Dr. Sims states that it was his medical opinion that "orthopedic arthroscopy findings were negative for any further orthopedic intervention at that time." (Dr. Sims Aff, p. 2) The doctor noted that the plaintiff had just been seen by an orthopedic surgeon on June 20, 2002. The doctor did order a pain reliever such as Motrin for the plaintiff and provided a cane which the plaintiff refused.

Dr. Sims says he next saw the plaintiff on July 30, 3003.  The plaintiff was demanding a new shoe, knee placement surgery and medication refills.   The doctor told the plaintiff that he was not in need of surgery.  The doctor did order medication, a cane and ordered additional testing.

The next time the doctor saw the plaintiff was August 19, 2002.  The plaintiff stated he had heard a pop and then experienced severe pain in his knee.   Dr. Sims examined the plaintiff's knee and found no change in his skin color nor swelling.    The doctor did detect some tenderness near plaintiff's knee.   The doctor prescribed medication and admitted the plaintiff to the infirmary for observation.   The doctor ordered a "neoprene medium knee sleeve for six months" and strict bed rest. (Sims Aff, p. 3)

Dr Sims says he did not believe the plaintiff's symptoms required referral to an outside

2

specialist.   The doctor says he also considered observations in the medical records during the plaintiff's stay at Western Illinois Correctional Center.  Staff nurses indicated that they had observed the plaintiff walking about the healthcare unit throughout the day without using his cane.  The plaintiff was not limping and did not show any difficulty in moving.

The doctor re-examined the plaintiff the next day and the plaintiff again complained of knee pain.  The doctor again noted no swelling, but did note tenderness.   The doctor diagnosed the plaintiff as having degenerative joint disease resulting from a previous injury.  "However, the knee was without an appreciable difference" since he arrived at the facility. (Sims Aff., p. 4) The plaintiff was discharged into the general population.  Dr Sims says it was his medical opinion that the plaintiff did not require further hospitalization nor referral to an outside physician.

On August 22, 2002, the plaintiff was provided with a set of boots with a left shoe lift. The doctor notes that despite the plaintiff's requests for this shoe lift, he was observed on various occasions walking without the lift and without the prescribed cane.

The plaintiff saw Dr. Sims again on October 7, 2002; December 5, 2002; and January 6, 2003.  Each time the doctor examined the plaintiff's knee, prescribed medication, replaced shoe lifts, and sleeves for the plaintiff's hip and knee.  The doctor says it was his diagnosis that the plaintiff continued to suffer from degenerative joint disease.    Dr. Sims says he planned to have the plaintiff receive follow up care with the on-site orthopedic physician after his December visit, but the plaintiff was unable to see this doctor due to scheduling and time constraints.   The plaintiff was released from custody on January 6, 2003.

Much of the plaintiff's response deals with problems he had leading up to his knee surgery.  This is not the subject of plaintiff's complaint.  The plaintiff did not even name officials from the Pontiac Correctional Center as defendants in this case.   The plaintiff does state that Dr. Sims did not follow the specific orders of his orthopedic surgeon for follow up care.  The plaintiff has not provided documentation of any specific care that was required. The plaintiff also claims Dr. Sims was not qualified to examine his knee as he was not an orthopaedic specialist.

LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "material fact" is one that "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  Id.

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record. Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970);   Schroeder v. Barth, Inc., 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving

party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994). "Summary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

ANALYSIS

The defendants argue that the plaintiff has failed to demonstrate that they were deliberately indifferent to his serous medical need.  The plaintiff has failed to demonstrate that the defendants were deliberately indifferent to his serious medical condition. "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997)(citing Farmer at 840-42).  Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. Shockley v Jones, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. Forbes v. Edgar, 112 F.3d, 262, 267 (7th Cir. 1997).

While delays in treating some medical conditions may constitute a constitutional violation, a mere disagreement about the type of medical treatment does not. Gutierrez v Peters, 111 F.3d 1364, 1371 (7th Cir. 1997); Snipes v. Detella, 95 F3d 586, 591 (1996). In short, "the Eighth Amendment is not a vehicle for bringing claims of medical malpractice." Snipes, 95 F.3d at 590.

The plaintiff has provided no evidence to the court that he was denied specific care that was ordered by specialist.  He also has not provided the court with any evidence of further injury to his knee.  Instead, the medical records demonstrate that the plaintiff was repeatedly seen and treated during his approximately six months at Western Illinois Correctional Center.  The revised motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants first motion for summary judgement is denied as moot. [d/e 42]**

**2) The defendants revised motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 47]  The Clerk of the Court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six**

**months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.**

**4) The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**5)  The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Enter this 27th day of March, 2006.

**s\Harold A. Baker**

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE